**[Cite as *In re N.H.*, 2017-Ohio-2945.]**

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: N.H. - N.H. 2 ET AL., | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | Case No. 17-CA-5 |
| | : |       17-CA-6 |
| | : | |
| | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Fairfield County Court of Common Pleas, Juvenile Division, Case Nos. 2015-AB-189 and 2015-AB-190 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT: | May 19, 2017 |

APPEARANCES:

For Plaintiff-Appellee

R. KYLE WITT
Prosecuting Attorney

By: DAVID K. H. SILWANI
Assistant Prosecuting Attorney
Fairfield County, Ohio
239 W. Main Street, Ste. 101
Lancaster, Ohio 43130

For Guardian Ad Litem

EDWARD ITAYIM
739 S. Third Street
Columbus, Ohio 43206

For Defendant-Appellant S.H.

JULIA TABOR
Law Offices of Jason M. Donnell, LLC
118 South Pearl Street
Lancaster, Ohio 43130

For Mother

AJMERI HOQUE
YMF Inc.
84 South 4th Street
Columbus, Ohio 43125

*Baldwin, J.*

{¶1}    Appellant S.H. appeals from the January 10, 2017 Judgment Entry of the Fairfield County Court of Common Pleas, Juvenile Division, granting permanent custody of his two children to Fairfield County Child Protective Services.

STATEMENT OF THE FACTS AND CASE

{¶2}    N.H. (DOB 7/9/15) and N.H. (DOB 7/9/15), who are twins, are the biological children of appellant S.H. On July 22, 2015, Fairfield County Child Protective Services (FCCPS) filed complaints alleging that N.H. and N.H. were dependent children. On the same day, the two children were placed in the temporary shelter custody of FCCPS. The complaints were later dismissed without prejudice.

{¶3}    On October 13, 2015, FCCPS filed complaints alleging that both children were dependent children. Following a shelter hearing held the same day, the two children were placed in the temporary custody of FCCPS. On November 19, 2015. N.H. and N.H. were found to be dependent children and were placed in the temporary custody of FCCPS.

{¶4}    Thereafter, on June 13, 2016, FCCPS filed motions in both cases seeking permanent custody of the children. An oral hearing on the motion commenced before a Magistrate on October 10, 2016. While the children's mother did not contest the motion, appellant did.

{¶5}    At the hearing, Dr. Mary Elizabeth Flum, an outpatient therapist with a PH.D. in counseling education, testified that she had a chance to assess appellant in January of 2016 and that appellant almost fell asleep during her evaluation. She testified that

appellant discussed his use of marijuana which had developed into a daily habit and also that appellant stated that, in approximately 2010, he had started using opiates and had overdosed eight times. Dr. Flum testified that appellant stated that he had been diagnosed with bipolar disorder. Dr. Flum, following a psychological examination, diagnosed appellant with bipolar I disorder, a personality disorder that caused appellant to have disruptions in his relationships with others and issues with impulse control, and chemical dependency based on his opioid use. She also diagnosed him with borderline intellectual functioning. Dr. Flum testified that she recommended that appellant continue his psychiatric consultation and continue with substance abuse treatment. Dr. Flum testified that she wanted appellant to have his medications monitored so that his mood swings and concerns with anxiety and depression would be controlled. Appellant also was recommended by her to complete cognitive behavioral therapy and parenting education. The following is an excerpt from her testimony at the hearing:

{¶6} Q: From a hypothetical standpoint, let's just say that [S.H.] has not engaged in any of those recommendations, would that cause you concern about his ability to parent?

{¶7} A: Again, it would be hard for me to say having not observed him around his children. But generally, broadly speaking, if you're suffering from significant behavioral health, mental health behaviors, and you're not addressing those issues, then it could be setting you up for difficulties in your relationship with others.

{¶8} Q: Okay, Including children?

{¶9} A: Yes, it could be.

{¶10} Transcript at 188.

**{¶11}** Dr. Flum's evaluation of appellant was admitted as an exhibit.

**{¶12}** Stefanie Valdez, a caseworker with Franklin County Children's Services who had previously worked with Fairfield County Job and Family Services, testified that she was assigned the case of N.H. and N.H. on August 14, 2015, a month after the two were born, and remained the caseworker until May 27, 2016. She testified that the agency became involved after the children's mother posted on Facebook while the children were in the hospital that she did not have items for the babies and the two parents were behaving erratically. She also indicated that the agency had concerns that the parents were substance abusers and were unable to meet the special needs of the twins, who were premature. When asked about the case plan for appellant, she testified that he was to complete an alcohol/drug assessment through the Recovery Center and follow through with recommendations, engage in mental health counseling and follow recommendations, complete a psychological evaluation and follow recommendations, and complete parenting education. Valdez testified that housing was not a concern and that appellant received a monthly disability check. According to Valdez, when the agency first received the case, appellant already had a Subutex prescription. She testified that appellant was to maintain his prescriptions and show them to the agency when requested to do so. Valdez testified that appellant was assessed by the Recovery Center and started services there. While Valdez was his caseworker, appellant was working on his alcohol/drug treatment. Valdez testified that appellant tested positive for marijuana in September of 2015.

**{¶13}** Joanne Butcher, the caseworker who took over for Valdez in June of 2016, testified that since she had taken over, appellant had made little progress on his case

plan with respect to drug and alcohol recovery issues. When she first started, appellant was connected with the Recovery Center but wasn't going. Butcher testified that appellant did see a counselor at MidOhio.  According to Butcher, appellant had completed the first packet at MidOhio that is used for alcohol and drug education, but that there were several packets. When asked if, with respect to counseling for drug and alcohol issues, appellant had successfully completed that portion of his case plan, she testified that he had not. Appellant had not shown proof of any prescriptions since August of 2016 although he was required to do so and had switched from Subutex to Suboxone without telling her. Butcher further testified that appellant had not complied with the recommendations from his psychological examination and was not doing anything, as far as she was aware, for his bipolar disorder.

{¶14} While appellant was seeing someone from MidOhio and had been doing better since July of 2016, Butcher testified that appellant had not made substantial progress on his case plan with respect to mental health counseling. She further testified that appellant was not receptive to parenting education and that appellant had not complied with that aspect of his case plan.

{¶15} Butcher testified that the agency had looked into other family members for purposes of placement, but that none were suitable or interested. She testified that she had monitored several visits between appellant and the twins and that during the visits, appellant bickered with the children's mother and seemed aggravated when one of the babies was fussy. According to her, there was "not a lot of loving, tenderness, that kind of stuff in their visits." Transcript at 551. She also had an opportunity to observe the twins

in their foster home. The following testimony was adduced when she was asked if there was any difference in how the twins behaved in their foster home than with appellant:

{¶16} A: There's a difference. Foster mom is very laid back. They have lots of things for the girls to do. They have sectioned off a large area of their room. They have lots of books. And like appropriate kind of little toys that they've been given examples of what would help with their physical development. So they can move around easily. And the girls are very affectionate. She will sit on the floor with them, you know, interacts with them more, I think. She's just more at ease I think with them than [S.H.] is.

{¶17} Transcript at 551-552.

{¶18} Butcher further testified that the children recognized appellant when he came in and interacted with him, but that they went to their foster mother if they fell or bumped their heads. She believed that there was "somewhat" of bond between appellant and the twins, but that there was not a strong bond. Transcript at 553. According to Butcher, when she tried to talk to appellant about one of the children's medical issues, appellant did not want to hear about it.

{¶19} Testimony also was adduced that appellant had been convicted of falsification the previous month and was going to spend 20 days in jail. Butcher testified that she had no idea until the hearing that appellant had new charges and was concerned for the safety of the children because appellant was involved with someone who was dealing drugs and was personally there. She indicated that she did not see enough progress made to attempt reunification with the children and that the agency still had the same concerns as it initially had. According to Butcher, the children needed a legally secure, permanent placement and that the need was stronger due to medical needs that

they had. She testified that they had delayed motor skills and a lot of medical issues due to being premature and that they had numerous medical appointment. Butcher stated that the agency believed that it was in the best interest of the children for permanent custody to be granted to the agency.

**{¶20}** At the hearing, Andrea Stedman, the visitation monitor since August of 2015, testified that appellant visited with his children consistently and was able to manage them by himself. She testified that during visits, appellant directed the children's mother and called her names and made comments about her parenting. The two had used foul language. Stedman testified that she canceled one visit in September of 2016 over fear for the mother after observing an argument between appellant and the mother. Appellant told her that some woman had accused him of punching the children's mother in the mouth, but that he told her that he had shoved a doughnut into her mouth and had not hit her.

**{¶21}** At the hearing, Edward Itayim, the Guardian Ad Litem, testified that he recommended that the motion for permanent custody be granted.

**{¶22}** The Magistrate, in lengthy and thorough Decision filed on October 28, 2016, recommended that appellant's parental rights be terminated and that both children be placed in the permanent custody of FCCPS. Appellant filed objections to such decision. Thereafter, the trial court, in a Judgment Entry filed on January 10, 2017, overruled appellant's objections and ordered that the children be placed in the permanent custody of FCCPS.

**{¶23}** Appellant now raises the following assignment of error on appeal[1]:

---

[1] Appellant filed appeals with respect to both children.

{¶24} THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING THE STATE'S MOTION FOR PERMANENT CUSTODY WITHOUT CLEAR AND CONVINCING EVIDENCE.

I

{¶25} Appellant, in his sole assignment of error, argues that the trial court erred in granting permanent custody of the two children to FCCPS. We disagree.

{¶26} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶27} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties'

demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 1997-Ohio-260, 674 N.E.2d 1159.

**{¶28}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

**{¶29}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending.

**{¶30}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶31}** In the case sub judice, the trial court found that R.C. 2151.414(B)(1)(a) applied. Pursuant to R.C. 2151.414(B)(1)(a), the trial court found the children could not

be placed with either of the children's parents within a reasonable time or should not be placed with the children's parents. In making this decision, the trial court must consider the factors of R.C. 2151.414(E). The trial court specifically found that R.C. 2151.414(E)(1), (2), (4), (13), and (16) applied to appellant.

{¶32} R.C. 2151.414 states, in relevant part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1)   Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental

utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;…

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;...

(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child….

(14) The parent for any reason is

(16) Any other factor the court considers relevant.

**{¶33}** In the case sub judice, there was testimony that appellant had not substantially complied with his case plan. Joanne Butcher testified that, with respect to alcohol and drug counseling, appellant had not successfully completed that portion of his plan and had completed only one out of several packets in relation to alcohol/drug counseling. While appellant testified at the hearing that he had consistently been going

to NA and AA meetings for two years, he did not know the first step in the recovery process and did not have a sponsor, although he indicated that he needed to get one. When asked at the hearing how long it was going to take him to taper off of the Suboxone, appellant testified that even if his doctor disagreed, he was going to lower how much he was taking. Butcher further testified that appellant had not been complying with the recommendations of the psychological evaluation and was not doing anything for his bipolar disorder. She further voiced concerns over the fact that appellant had never given her a "straight answer" about which medications he took and had not shown her any prescriptions for his bipolar disorder. Transcript at 547. Moreover, Stefanie Valdez, appellant's prior caseworker, testified that appellant did not comply with the recommendations from the psychological evaluation since he did not engage in any group therapy as was recommended by the psychologist.

**{¶34}** Butcher also testified that while appellant had been doing better with mental health counseling since July of 2016, he had not made substantial progress and that it was the opinion of the agency that he had not complied with that aspect of his case plan. While appellant sought mental health counseling from MidOhio, he attended approximately twelve appointments since December of 2015 and had missed approximately five to seven appointments since then.

**{¶35}** According to Butcher, appellant also had not complied with that portion of his case plan requiring parenting education. Andrea Stedman testified that she terminated parenting sessions with appellant after he failed to attend them consistently and that appellant had not had any formal parenting education from her since May of 2016. She further testified that appellant did not implement what he had learned.

**{¶36}** The Guardian Ad Litem, in his October 3, 2016 report, indicated that it was his opinion that appellant and the children's mother had not made significant enough progress with their mental health to reunify with the children and that he did not believe that the issue could be remedied within a reasonable amount of time.

**{¶37}** Based on the foregoing, we find that there was clear and convincing evidence that appellant had failed to substantially comply with his case plan.

**{¶38}** The trial court further found that R.C. 2151.414(E)(2) applied. As is discussed above, there was testimony that appellant failed to complete the drug and alcohol portions of his case plan. Dr. Flum testified at the hearing that appellant told her that he had overdosed 8 times and had used heroin. Appellant testified that he had been attending AA and NA meetings consistently for two years, but did not have a sponsor and was unable to state what the first step of recovery was. As part of his assessment at the Recovery Center, appellant was to engage in 12 step meetings. There was testimony that the position of the agency was that appellant had not successfully completed counseling for drug and alcohol issues. Kerith Palletti, a counselor at the Recovery Center, testified that appellant did not successfully complete counseling and was discharged in July of 2016 for attendance issues.

**{¶39}** Furthermore, with respect to R.C. 2151.414(E)(13), there was testimony at the hearing that appellant had three domestic violence convictions and convictions for receiving stolen property, theft, criminal damaging, assault, attempted breaking and entering and driving under the influence. Appellant testified that he spent thirteen months in prison once and was in jail "too many times to count with both hands." Transcript at 303. Appellant also pled guilty to falsification in September of 2016 and was sentenced

to 180 days in jail with all but twenty days suspended. The charge stemmed from a drug deal involving appellant's friends.

**{¶38}** Based on the foregoing, we find that there was clear and convincing evidence supporting the trial court's finding that appellant had continuously and repeatedly failed to substantially remedy the conditions causing the children to be placed outside the home and that the children could not be placed with either parent within a reasonable time or should not be placed with either parent. As noted by the Magistrate, appellant "has not complied with the case plan, has not followed the recommendations of his psychological evaluation, has not adequately complied with mental health treatment recommendations, has not adequately complied with recommended drug and alcohol treatment, has not participated in parenting education, and has not consistently attended the children's medical appointments."

**{¶39}** Appellant also challenges the trial court's finding that it was in the best interest of the children for permanent custody to be granted to the agency. R.C. 2151.414(D) states as follows:

(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b)  The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c)  The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d)  The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)  Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶40}** There was testimony at the hearing that while the children, who are too young to express their wishes and who were placed with the agency shortly after their birth, were somewhat bonded to appellant, they were more bonded to their foster mother and looked to her when they needed care or comfort. There was testimony that during visitation with the children, appellant and the children's mother spent more time looking for bottles and with "housekeeping stuff" than interacting with the children. Transcript at 553. The Guardian Ad Litem, in his October, 2016 report, noted that the children, who had physical developmental delays, were very attached to their foster parents who were

looking to adopt them and that while appellant's grandmother was a potential placement option, she had serious health concerns and would not be an appropriate caregiver.  The Guardian Ad Litem indicted that permanent custody was in the children's best interest.

**{¶41}** There also was testimony that the relationship between appellant and the children's mother was tumultuous and that the two constantly bickered during visits with children. According to Valdez, appellant and the mother tattled on each other.  There further was testimony that appellant belittled the mother and called her names such as "idiot", "dweeb" "dork" and "slow" in front of the children. While appellant was requested by the agency to attend the children's medical appointments, he did not consistently do so and during the duration of the case, attended 8 out of 25 appointments.

**{¶42}** Moreover, at the hearing, the children's current caseworker testified as to the children's need for a legally secure, permanent placement. The following is an excerpt from her testimony**:**

**{¶43}** Q:  All right.  Now, do you think that NH and NH have a stronger need for legally secure, permanent placement due to their medical issues?

**{¶44}** A:  Yes.

**{¶45}** Q:  And why is that?

**{¶46}** A:   Well, because they're going to need extra attention because of those medical needs.  It's extra work.  There's lots of appointments.  There's lots of things that need to be done special for them.  So, you know, it's much more imperative in order for them to grow to be healthy adults, they are going to need all this extra stuff.

**{¶47}** Q:  And what is the Agency's position as to what's in the best interest of the children?

**{¶48}** A: The Agency position is in the best interest of the girls, for the Agency to have permanent custody.

**{¶49}** Transcript at 569- 570.

**{¶50}** Based on the foregoing, we find that there was clear and convincing evidence that it was in the best interest of the children for permanent custody to be granted to the agency.

**{¶51}** Appellant's sole assignment of error is, therefore, overruled.

**{¶52}** Accordingly, the judgment of the Fairfield County Court of Common Pleas, Juvenile Division, granting permanent custody of his two children to Fairfield County Child Protective Services is affirmed.

By: Baldwin, J.

Gwin, P.J. and

John Wise, J. concur.